Filed 4/12/21  In re J.M. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re J.M. et al., Persons Coming Under the Juvenile Court Law. | B305486 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JASON M., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK23780) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael C. Kelley, Judge.  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

After declaring dependency jurisdiction in 2017, the juvenile court gave appellant Jason M. (Father) custody of his young children, despite his history of drug abuse. Supplemental petitions were sustained when Father continuously disobeyed orders to undergo drug testing. After years of noncompliance, the court removed the children from Father's custody in 2020. (Welf. & Inst. Code, § 387.)[1] We conclude that substantial evidence supports the removal order and affirm.

**FACTS AND PROCEDURAL HISTORY**

Father has three children who are the subject of this appeal: J.M. (born in 2012), L.M. (2013) and Jon M. (2015). His son Jason Jr. (born in 2002) is not a party. The court sustained a petition against W.M., the dependent children's mother (Mother), who did not appeal.

In July 2017, Father called police to report that Mother hit five-year-old J.M. with an extension cord, leaving welts on his buttocks, hips and thigh. J.M. told an officer, "mommy hit me with a cord." His injuries—long linear looping lacerations—were photographed. J.M. told hospital medical staff that Mother hit him in anger with a cord.

A social worker (CSW) from respondent Department of Children and Family Services (DCFS) interviewed the family. Father said Mother's use of methamphetamine causes her to display violent behavior such as throwing objects and hitting him. Father was at work when Mother hit J.M. CSW saw marks and bruises on J.M. Jason Jr. reported that a month earlier, J.M. said "mommy hit me with a shoe."

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

Mother claimed J.M.'s leg was injured by a car door. Later, she said "nobody knows" who inflicted the injuries, though J.M. was with her the entire day while Father was at work. She accused Father of hitting her with a closed fist and shaking her; during parental fights the children became "really emotional." Later, she said that there was only one physical fight and the children did not witness it. Mother said Father introduced her to "crystal meth" to add "fun" to their marriage. He stopped using methamphetamine in April or May of 2017. Mother refused to drug test or cooperate with a police investigation into child abuse. Father tested positive for cannabinoids. He claimed to use marijuana "very infrequently" to relieve back pain.

Jason Jr. disclosed that when Mother and Father argue "every other night," he takes his young siblings upstairs because it is "really bad." He denied seeing physical violence. When he comes home from school, he takes care of his siblings because Mother is "passed out on the couch."

A petition filed in August 2017 alleged that Mother physically abused J.M., inflicting serious harm and endangering his siblings; Mother and Father engaged in violent altercations in the children's presence; and Father and Mother have a history of substance abuse and currently abuse drugs. DCFS removed the children from Mother, citing a high risk of physical abuse and neglect. They remained in Father's care.

The court found a prima facie case to detain the children, who were placed with Father. Father was referred to counseling for domestic violence and substance abuse, parenting education and random drug testing. He was ordered not to monitor Mother's visits.

3

Father denied engaging in domestic violence, saying Mother made false accusations to prevent him from living with the children, who love him. Father knew that Mother was using methamphetamine: She was violent, hit him, smashed things, lost weight, and spent nights away from home. She left the children with "random strangers" while he worked long hours; he relied on neighbors to tell him if anything strange was occurring in his home. He never thought she would hurt the children. Father said he formerly used methamphetamine but currently uses only marijuana.

DCFS deemed Father negligent for allowing Mother to tend to the children while using methamphetamine; she left them while getting "high" and was unable to properly care for them. The parents had a physical fight after Mother stayed out all night and Father "jumped her case." Given Father's past use of methamphetamine and Mother's accusation that he introduced her to the drug, DCFS recommended that Father be ordered to drug test and refrain from all drug and alcohol use.

Father was reported for child abuse in 2008 when Jason Jr. was five. Jason Jr. told DCFS that Father choked him until tears came to his eyes. Father was reportedly under the influence at the time. The referral was "inconclusive" because Father refused to test for drugs, Jason Jr. denied being abused, and no marks or bruises were seen.

After the detention hearing, neither parent enrolled in programs and they failed to test for drugs. Father missed every test except one, which was positive for cannabinoids. Mother tested positive for methamphetamine and cannabinoids and refused to attend a court-ordered psychological evaluation.

4

At the jurisdiction hearing in March 2018, Mother pleaded no contest to two counts: (1) J.M. sustained bruises and welts while under her supervision, she failed to explain his injuries, and this places the children at substantial risk of physical harm; (2) she recently used methamphetamine, which negatively impacts her ability to consistently care for and supervise her young children, placing them at substantial risk of harm. At disposition, the children were removed from her care.[2]

Father testified that when he said he "jumped [Mother's] case" he meant he questioned her; he denied hitting her, though they scuffled over a phone. He blamed his failure to drug test on a "junk" cell phone. He argued that Mother's accusations against him are self-serving and asked the court to dismiss the petition.

The court believed Father's testimony denying domestic violence and Mother's statement that Father introduced her to drugs. Citing Father's failure to appear for drug testing, it sustained a count that Father has a history of substance abuse and convictions for possessing drug paraphernalia; he previously used methamphetamine and currently uses marijuana, which prevents him from providing regular care for children of a tender age and places them at risk of serious harm. The domestic violence count was dismissed.

Father was ordered to participate in weekly drug and alcohol testing and a substance abuse program if he tests positive or misses two tests; domestic violence and parenting programs; individual counseling to address case issues; and not to monitor Mother's visits. The court specified that Father's usage of marijuana cannot increase and he cannot test positive for illegal

_____

[2] In 2017, Mother was convicted of inflicting injury upon a child.

5

drugs. The children were declared dependents of the court and placed in Father's custody, under DCFS supervision.

In July 2018, DCFS filed a supplemental petition alleging that Father violated court orders by allowing Mother to frequent his home and have unmonitored access to the children; further, Father failed to undergo drug testing. His conduct endangers the children's health and safety.

In a detention report, DCFS stated that Father was warned in March 2018 that the children would be removed if he allowed Mother to transport or visit them without a DCFS monitor. He refused offers of childcare assistance. Told in May 2018 that he missed nine drug tests, he claimed to be unaware he should call the drug testing site. In June 2018, J.M. told CSW that Mother and Father were spanking him; Mother had done so "last night" at the family home. J.M. "observed fighting" between his parents. Mother pounded on the door and Father threatened to "knock her out." CSW went to a daycare facility where Father purportedly enrolled L.M. and was told they had no such child there. Father did not make the children available to DCFS, then instructed them not to tell CSW about Mother's visits. He did not enroll the children in counseling or participate in court-ordered programs. A YMCA staff member said that Mother came to pick up J.M. at summer camp.

The court authorized emergency removal of the children, who were placed with the paternal grandparents (PGPs). Father said his failure to drug test and Mother's visits to his home were based on a "misunderstanding." On July 3, 2018, the court found a prima facie case to detain the children because leaving them with Father poses a substantial danger: He gave Mother access to the children, there was domestic violence, and he failed to test

6

for drugs or presented "diluted" samples. He was given monitored visits.

In interviews, J.M. reiterated that Mother hit him with a cord but later apologized for hurting him. Father brought Mother to pick up J.M. at summer camp. Father hid J.M. from CSW when she came to the family home. Though Mother spanks J.M. for not listening, she no longer hits him with cords or shoes, just her hand. Father also spanks him.

Father conceded that Mother visited his home six or seven times. He said, "I broke the rules a little bit," rationalizing that he was trying to help Mother. Both parents had failed to appear for all their drug tests. DCFS felt Father endangered the children by allowing Mother to visit and physically punish J.M. After the children were detained, Father tested positive for cannabinoids four times and failed to show up for testing five times in a two-month span. DCFS reported that Mother is incarcerated.

In October 2018, Father waived his right to trial and pleaded no contest to allegations in the supplemental petition that he failed to comply with court orders requiring drug testing and by allowing Mother to frequent his home and access the children without an approved monitor; his conduct places the children at risk of serious physical harm.

In April 2019, DCFS reported that Mother did not participate in court-ordered programs or monitored visits from August 2017 until April 2018. Thereafter, she was arrested for possessing unlawful paraphernalia, shoplifting and identity theft. The last charge resulted in a felony conviction, for which she was incarcerated. The children were doing well in the home of PGPs.

Father completed a parenting program and individual counseling in December 2018. He flatly refused to enroll in a domestic violence program. He tested positive for cannabinoids 13 times from September through December 2018; he missed two tests, three were diluted, and the drug levels were increasing. He visits the children frequently at PGPs' home. They were excited to see him. Visits were not liberalized because Father "continues to use mind altering substances and has not enrolled in Domestic Violence and insists he will not do so." From January to April 2019, Father tested positive for cannabinoids 11 times and missed one test; the substance levels were high.

A contested disposition hearing was held in April 2019. Father testified that he visits the children daily at PGPs' home. He initially was uninterested in addressing domestic violence in counseling because he never hit anyone; he now realizes that allowing Mother to visit the children was dangerous, as was arguing in front of the children. Their altercations were verbal except for one incident in which Father knocked a phone from her hand, she jumped on him, and they fell. Mother is incarcerated so he does not see her as posing a threat.

Father is a dental assistant. He acknowledged that testing shows his marijuana intake has greatly increased. He insists that his usage has not affected his work or his life, claiming to smoke a single marijuana cigarette before bed and drink two beers at dinner or a glass of wine. He agreed to stop smoking marijuana entirely if the court orders it. He did not enter a rehabilitation program despite the increase in his drug levels. Father asked the court to return the children to his care or allow unmonitored visits.

The court found that Father is remorseful and has learned not to violate its orders. The court did not believe there is a risk of harm to the children, despite a concern about Father's increasing marijuana levels. Over the objection of DCFS, the court placed the children with Father and ordered him "to test weekly and show levels of marijuana decreasing to zero." He was ordered to take a full outpatient drug and alcohol program and a domestic violence program. The court authorized DCFS to remove the children from Father if his marijuana levels increase.

In August 2019, DCFS filed a second supplemental petition alleging that Father failed to comply with the court orders requiring a domestic violence program, a drug and alcohol program and decreased drug levels. Father tested positive 10 times from April to August and failed to show up for testing six times. DCFS removed the children from Father's care, although they have been living with PGPs since the April 2019 hearing. Father said he was homeless or living with a girlfriend; he refused to give DCFS an address to assess his living conditions. On July 29, he insisted he was "clean;" the following day, he tested positive for marijuana.

The court found a prima facie case to detain the children. It noted that this was no mere "slip-up" because "Father has either tested positive for marijuana or [was a] no show for every single test since the minors were released to him in April, and Father has not tested clean on one single occasion." Father violated the court's orders. He was given monitored visits and ordered to comply with the case plan.

In October 2019, DCFS reported that Father tested positive for marijuana twice in September, after the latest detention hearing, then failed to appear for a test. He claimed to have

enrolled in an outpatient drug treatment program but there were no progress reports. DCFS deemed the children (ages three, six and seven) at "high" future risk for neglect. PGPs are willing to adopt, should the parents fail to reunify.

Father knew the children were detained because he tested positive for alcohol and marijuana. He insisted, "The judge just told me to make sure my levels are coming down" but was unsure what his blood levels are. He blamed a positive alcohol test on a party where he had "a drink or two," forgetting that he had to drug test after the party. Father said, "I've taken a hit from the joint maybe once or twice since this whole thing," adding, "I can stop whenever I want to." He does not have a diagnosis warranting medical use of marijuana. He was reminded that he had to refrain from marijuana if he wants to reunify.

Father's new home was suitable for children. Jason Jr. resides there. Father visits the children regularly and they are happy to see him. He does not seem to be under the influence during visits, according to PGPs. DCFS was concerned that Father continues to use substances even after enrolling in a substance abuse program.

The court found the second supplemental petition true on November 5, 2019. After the hearing, Father was called to test four times in November; he did not appear for any of the tests. He was called four times in December and did not appear for a single test.

A contested disposition hearing was held on January 16, 2020. Father sought custody of the children or unmonitored and overnight visits. He claimed he had been unable to drug test and DCFS did not show that he was under the influence around the

10

children.  He completed a domestic violence program and is in an outpatient substance abuse program.

The court ruled that placing the children with Father would be detrimental to their welfare.  His continued use of substances and failure to submit to testing "all persuade me that there are serious unsolved issues of substance abuse here, and based on that, I find that the Department has met its burden in this case."  Father must continue with a drug and alcohol program, weekly drug testing and a 12-step program.

## DISCUSSION

### 1.  Timeliness of the Appeal

The clerk served the court's order on January 16, 2020.  The notice of appeal in our record was filed on March 17, 2020, one day after the 60-day window for filing an appeal expired.  (Cal. Rules of Court, rule 8.406(a).)  We issued an Order to Show Cause why the appeal should not be dismissed as untimely.

In response, Father submitted evidence that his notice of appeal was stamped "Received" on March 12, 2020.  Trial counsel declares that the Superior Court clerk demanded "one appeal per child."  Trial counsel complied but the notice was not stamped "Filed" until March 17, one day after the appeal period lapsed.  Respondent has not objected to Father's evidence.

We deem Father's appeal to be timely filed.  A notice of appeal delivered "within the requisite period and rejected by the clerk for reasons having nothing to do with timeliness" satisfies court rules.  (*Pangilinan v. Palisoc* (2014) 227 Cal.App.4th 765, 769–770 [rejected appeal bore the wrong case number].)  "The act of delivering the document to the deputy clerk at the court during office hours constituted the act of filing."  (*Rapp v. Golden Eagle Ins. Co.* (1994) 24 Cal.App.4th 1167, 1172; Cal. Rules of Court,

11

rule 8.25(b)(1) ["A document is deemed filed on the date the clerk receives it."].)

## 2. The Removal Order

Father has the burden of showing that no substantial evidence supports the court's order.  (*In re D.B.* (2018) 26 Cal.App.5th 320, 328–329.)  Without reweighing the evidence or evaluating witness credibility, we resolve all conflicts in favor of the respondent and draw all reasonable inferences in support of the judgment.  (*Ibid.*; *In re R.T.* (2017) 3 Cal.5th 622, 633.)

A supplemental petition is used to change a dependent child's placement from parental custody to a more restrictive level of care if a previous disposition was ineffective.  (§ 387, subd. (b); *In re T.W.* (2013) 214 Cal.App.4th 1154, 1161 (*T.W.*); Cal. Rules of Court, rule 5.560(c).)  The petition "need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile court jurisdiction already exists."  (*T.W.*, at p. 1161.)

Father does not challenge the order sustaining the second supplemental petition.  There is thus no dispute that he failed to comply with court orders requiring completion of a domestic violence program, an outpatient drug and alcohol program, and drug testing showing drug usage decreasing to zero.

"If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate. . . . The only fact necessary to modify a previous placement is that the previous disposition has not been effective in protecting the child."  (*T.W., supra,* 214 Cal.App.4th at p. 1161; Cal. Rules of Court, rule 5.565(e).)

Removal requires proof of a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the children, and that even with the provision of services

12

there is no reasonable means to protect them without removal from the parents. (§ 361, subd. (c)(1); *In re Brianna S.* (2021) 60 Cal.App.5th 303, 312–313.) "The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*T.W., supra,* 214 Cal.App.4th at p. 1163.)

The court made the required findings. It stated, "I do find that putting the minors in the care of Father would be contrary to their welfare and I find that [DCFS] has demonstrated by clear and convincing evidence that there is or would be a substantial danger to the children's physical health, safety, protection or physical or emotional well-being of the children if the children were returned home. There are no reasonable means by which the children's physical health can be protected without removing [them] . . . from the Father's physical custody."

The court cited evidence of drug use that continued after the case plan was implemented in 2017. Father's failure to drug test convinced the court that he has "serious unsolved issues of substance abuse." Substantial evidence supports the ruling.

The children became dependents of the court in 2017 and remained in Father's custody. Father violated court orders specifying that Mother's visits had to be monitored because she physically abused J.M. with an electrical cord. During visits that were unsupervised by a DCFS monitor, Mother struck J.M. and engaged in altercations with Father. After encouraging the children to lie about Mother's impermissible visits, Father admitted to breaking visitation rules.

Father frequently missed court-ordered drug testing, offering excuses such as a faulty cell phone, or unawareness that he needed to call the drug testing facility. He repeatedly tested

13

positive and failed to enroll in a drug program. *After* the court sustained the second supplemental petition in November 2019, Father was called to test eight times and did not appear for a single test before the removal order was issued. It is clear Father has no intention of obeying court orders.

The "provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.) The goal is to avert the *risk* of harm to the child. (*Ibid*; *In re I.J.* (2013) 56 Cal.4th 766, 773.) Two of the three children were of a tender age at the time of the dispositional hearing, and thus presumptively are at risk due to Father's substance abuse where, as here, Father is their sole caregiver. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219–1220 [father's chronic marijuana use is prima facie evidence of his inability to care for young children].) And, as discussed next, all three children face also "*identified, specific hazard[s]* in the[ir] environment (*In re Drake M.* (2012) 211 Cal.App.4th 754, 766–767).

The court felt it could not ensure the children's safety without assurances that Father is sober, given a history that includes use of methamphetamine. The court could reasonably conclude that Father is not committed to his young children's safety and his lapses in judgment—failing to drug test, diluting his tests, using increasing amounts of marijuana, falsely telling DCFS he was clean, hiding the children from DCFS, introducing Mother to methamphetamine and letting her care for the children despite her violent behavior, allowing Mother to visit the children without a DCFS monitor and to hit J.M.—are the result of his entrenched substance abuse. (See *In re M.R.* (2017)

14

8 Cal.App.5th 101, 109–110 [parental judgment lacking where they discounted the significance of alcohol use leading to a DUI].)

Father's substance abuse is a condition that led to the children's dependent status. His use of marijuana is far from "occasional." It is compelling that Father knew he had to stop using marijuana to reunify with his children, yet he was unable to stop. His addiction has supplanted his judgment.

The record supports a finding that reasonable efforts were made to prevent or eliminate the need to remove the children from Father's custody. (§ 361, subd. (d).) Father is an offending parent who had years to comply with the case plan. The court sustained the original petition in 2017, followed by supplemental petitions in 2018 and 2019; Father ignored all three sustained petitions. He could have chosen his children over drugs by achieving sobriety at any point in three years. He failed to do so, necessitating the children's removal.

## DISPOSITION

The disposition order is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.


We concur:


CHAVEZ, J.


HOFFSTADT, J.

16