Filed 7/1/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MITZIE PANGILINAN, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> HECTOR PALISOC, <br><br>     Defendant and Respondent. | H038737 <br> (Santa Clara County <br> Super. Ct. No. CP019454) |

       Plaintiff Mitzie Pangilinan appeals from the denial of her petition to establish a parental relationship between her son H. and respondent Hector Palisoc and obtain child support from Palisoc. She claims that the trial court erred in finding her petition untimely and in declaring that her husband, a nonparty, was H.'s presumed father. We find that the trial court prejudicially erred in finding Pangilinan's petition to be untimely and in failing to entertain her request for genetic testing. Accordingly, we reverse the order.

## I. Background

       Pangilinan separated from her husband, who lives in the Philippines, in 2006 when she moved to the United States. She began a relationship with Palisoc, who was also married, in February 2008. H. was born in November 2008. Pangilinan's husband's name was listed on H.'s birth certificate as H.'s father. When H. was baptized in December 2008, Pangilinan's husband's name was listed as H.'s father on the invitations to the baptism. Pangilinan's relationship with Palisoc lasted until July 2011. Palisoc

established and maintained a relationship with H. from the time of his birth until the end of Palisoc's relationship with Pangilinan. However, Palisoc never openly or publicly acknowledged that H. was his son.

In August 2011, Pangilinan filed a petition to establish a parental relationship between H. and Palisoc. She sought a declaration that Palisoc was H.'s father and sought child support from him. Pangilinan asked the court to order genetic testing. Palisoc denied that he was H.'s father and asked the court to declare that Pangilinan's husband was H.'s presumed father. He claimed that Pangilinan had waited too long to file her petition because her petition amounted to a challenge to the presumption that her husband was H.'s father. Palisoc also asserted that even if Pangilinan's petition was timely, she had failed to present clear and convincing evidence that Palisoc was H.'s father. Pangilinan's husband was not made a party to the action.

The case was tried to the court on July 3, 2012, and the court issued a statement of decision on July 6, 2012. The court found that Family Code section 7540's conclusive presumption did not apply because Pangilinan and her husband were not cohabiting when H. was conceived or born. Nevertheless, the court premised its refusal to order genetic testing on Family Code section 7541,[1] which applies only where section 7540 applies. The court then found that Pangilinan's husband qualified for presumed father status under former section 7611 because Pangilinan and her husband were married when H. was born. Reasoning that Pangilinan's action was an action to establish the nonexistence of a parent-child relationship between her husband and H. under former section 7630, subdivision (a)(2), the court concluded that her action was untimely because it had not been brought within a "reasonable time." The trial court rejected Pangilinan's claim that Palisoc too qualified for presumed father status and instead found that Palisoc "did not

_____

[1]      Subsequent statutory references are to the Family Code unless otherwise specified.

2

openly and publicly receive H[.] into his home at any time" and that "there is not persuasive evidence that [Palisoc] ever held the child out as his own." The statement of decision ended: "ORDER [¶] 1. Husband of Petitioner is the presumed father of H[.]. [¶] 2. Petitioner's OSC requesting Child Support from Respondent is denied." On Wednesday, September 5, 2012, Pangilinan filed a notice of appeal from the statement of decision.

## II. Discussion

### A. Appealability and Timeliness of Appeal

The first question is whether the statement of decision was an appealable order. "The general rule is that a statement or memorandum of decision is not appealable. [Citations.] The rule's practical justification is that courts typically embody their final rulings not in statements of decision but in orders or judgments. Reviewing courts have discretion to treat statements of decision as appealable when they must, as when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.) The statement of decision in this case is signed and filed and, given its wording, was clearly intended to constitute the court's final decision on the merits. Hence, we treat it as an appealable order.

The next question is whether Pangilinan's notice of appeal was timely filed. "[A] notice of appeal must be filed on or before the earliest of: [¶] (A) *60 days after* the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment *or a file-stamped copy of the judgment, showing the date either was served.*" (Cal. Rules of Court, rule 8.104(a)(1)(A), italics added.) On July 6, 2012, the superior court clerk served on both parties a file-stamped copy of the statement of decision. Pangilinan's notice of appeal was filed on September 5, 2012, which was *61* days after the service of the statement of decision.

3

We requested supplemental briefing on this issue since the parties' briefs had not addressed the timeliness of the notice of appeal. Pangilinan's attorney, Richard Wilson, submitted a declaration of Rosemary Janis, who was his employee at the time the notice of appeal was prepared. Janis declared that the notice of appeal had been prepared by Wilson on August 27, 2012, and Janis had mailed it to Palisoc's attorney on August 29. That same day, August 29, Janis personally took the original notice of appeal and copies to "the clerk's office" where she left them "with a courier slip to have a filed copy of the notice returned to the office." The following week, Janis and Wilson learned that the "Clerk rejected the filing because of a problem with a filing fee," apparently related to the notice of appeal bearing the wrong case number. The error was "corrected . . . immediately."

Pangilinan argues that her notice of appeal must be deemed filed on August 29, 2012, rather than September 5, 2012, because Janis presented it to the clerk's office for filing at that time. In *Rapp v. Golden Eagle Ins. Co.* (1994) 24 Cal.App.4th 1167 (*Rapp*), the notice of appeal was presented to the clerk for filing but rejected because the filing fee proffered was not the correct amount, resulting in a delay in the filing of the notice. The Court of Appeal held that the presentation of the notice of appeal to the clerk within the requisite period rendered it timely despite the error regarding the filing fee. "The act of delivering the document to the deputy clerk at the court during office hours constituted the act of filing." (*Rapp*, at p. 1172.) Here, as in *Rapp*, the notice of appeal was delivered to the clerk's office well within the requisite period and rejected by the clerk for reasons having nothing to do with timeliness. As in *Rapp*, we deem the notice of appeal to have been filed on August 29, 2012, rather than September 5, 2012, and therefore find it to have been timely filed.

4

## B.  The Merits

The Uniform Parentage Act (§ 7600 et. seq.) provides a means for establishing the existence of a parent-child relationship between a man and a child.  (Former § 7610.)  Former section 7611 sets forth the requirements for a man to become a *presumed* father of a child:  "A man is presumed to be the natural father of a child if he meets the conditions provided in Chapter 1 (commencing with Section 7540) or Chapter 3 (commencing with Section 7570) of Part 2[2] or in any of the following subdivisions:  [¶] (a)  He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a judgment of separation is entered by a court.  [¶] . . . [¶]  (d)  He receives the child into his home and openly holds out the child as his natural child."[3]

Former section 7630 authorizes an action to establish a father-child relationship:  "(a) . . . [T]he child's natural mother . . . may bring an action as follows:  [¶]  (1)  At any time for the purpose of declaring the existence of the father and child relationship presumed under subdivision (a), (b), or (c) of Section 7611.  [¶]  (2) For the purpose of declaring the nonexistence of the father and child relationship presumed under subdivision (a), (b), or (c) of Section 7611 only if the action is brought within a reasonable time after obtaining knowledge of relevant facts.  After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party.  [¶]  (b)  Any interested party may bring an action at

---

[2]     Section 7540 and the chapter in which it appears concern the child of a wife cohabiting with her husband, which, as the trial court found, is not the case here.  (§ 7540.)  Section 7570 and the chapter in which it appears concern establishing parentage by a voluntary declaration, which is not at issue here.  (§ 7570.)

[3]     None of the other subdivisions of former section 7611 is relevant here.

any time for the purpose of determining the existence or nonexistence of the father and child relationship presumed under subdivision (d) or (f) of Section 7611.  [¶]  (c)  Except as to cases coming within Chapter 1 (commencing with Section 7540) of Part 2, an action to determine the existence of the father and child relationship may be brought by . . . the mother . . . ."  (Former § 7630.)

The trial court assumed that Pangilinan's action was required to be filed "within a reasonable time" under former section 7630, subdivision (a)(2).  Yet Pangilinan was authorized under former section 7630, subdivision (c) to bring an action "to determine the existence of the father and child relationship" without complying with former section 7630, subdivision (a)(2)'s "reasonable time" limitation.  The key difference between former section 7630, subdivision (c) and the other subdivisions of former section 7630 is that subdivision (c) does not concern the former section 7611 presumptions.[4]  Pangilinan sought to establish that Palisoc was H.'s natural father.  Since Palisoc did not fall within any of the categories of presumed fathers, her action seeking to declare him H.'s father was authorized by former section 7630, subdivision (c).[5]  Consequently, there was no

---

[4] Prior to January 1, 2011, section 7630, subdivision (c) applied only where the child had no presumed father, which was not the case here.  (Stats. 2008, ch. 534, § 3.)  In 2010, the Legislature amended section 7630, subdivision (c) so that it applied regardless of whether the child had a presumed father.  (Stats. 2010, ch. 588, § 1.)  Thus, it is no longer true, as it was at the time of *Dawn D. v. Superior Court* (1998) 17 Cal.4th 932 (*Dawn D.*), that an alleged father cannot bring an action to determine his paternity where there is a presumed father.  (*Dawn D.*, at pp. 937-938.)  Since Pangilinan's action was initiated in August 2011, we reject Palisoc's reliance on *Dawn D.*

[5] Although Pangilinan seemed to be attempting to show that Palisoc qualified for presumed father status under former section 7611, subdivision (d), which applies to a man who "receives the child into his home and openly holds out the child as his natural child," the trial court made undisputed factual findings that Palisoc did not qualify under that subdivision.

6

"reasonable time" restriction, and the trial court erred in rejecting her petition on this ground.

Where one man qualifies for presumed father status, as Pangilinan's husband would in this case, another man who does not qualify for presumed father status still may be declared the child's father under former section 7612, subdivision (a) if the presumption is rebutted by clear and convincing evidence. Former section 7612 provides: "(a) Except as provided in Chapter 1 (commencing with Section 7540) and Chapter 3 (commencing with Section 7570) of Part 2 or in Section 20102, a presumption under Section 7611 is a rebuttable presumption affecting the burden of proof *and may be rebutted in an appropriate action only by clear and convincing evidence*. [¶] (b) If two or more presumptions arise under Section 7610 or 7611 that conflict with each other, or if a presumption under Section 7611 conflicts with a claim pursuant to Section 7610, the presumption which on the facts is founded on the weightier considerations of policy and logic controls." (Former § 7612, italics added.) "These are presumptions [under section 7611], none of which is conclusive, and it is apparent [that] natural parentage can be established without resort to any presumption." (*In re Tricia M.* (1977) 74 Cal.App.3d 125, 132.)

Pangilinan could establish that Palisoc was H.'s natural father if she rebutted by clear and convincing evidence the presumption that her husband was H.'s father. She asked the trial court in advance of trial to order genetic testing in order to establish Palisoc's status as H.'s natural father. "In a civil action or proceeding in which paternity is a relevant fact, the court may upon its own initiative or upon suggestion made by or on behalf of any person who is involved, and shall upon motion of any party to the action or proceeding made at a time so as not to delay the proceedings unduly, order the mother, child, and alleged father to submit to genetic tests." (§ 7551.) "In many cases involving alleged fathers, the question of paternity is undeniably relevant, for example, *in cases*

7

*concerning child support* or inheritance rights."[6] (*In re Joshua R.* (2002) 104 Cal.App.4th 1020, 1027, italics added.)

Although this was a case in which Palisoc's paternity was "undeniably relevant" to determining whether he had a duty to support H., the trial court never considered ordering genetic testing under section 7551 because it mistakenly believed that section 7541 precluded such an order and that Pangilinan's action was untimely under former section 7630, subdivision (a)(2). Neither of these beliefs was accurate. Section 7541 did not apply because it applies only where section 7540's conclusive presumption applies. The court properly found that section 7540's conclusive presumption did not apply here. Former section 7630, subdivision (a)(2)'s timeliness requirement did not apply because Pangilinan's action was properly brought under former section 7630, subdivision (c), which contains no timeliness requirement. Since the court erred in both respects, leading to its failing to order genetic testing, its decision to deny the petition cannot be upheld. Had the court ordered genetic testing, Pangilinan might well have been able to rebut the presumption that her husband was H.'s father with clear and convincing evidence that Palisoc was H.'s father. Therefore, reversal is required.

## III. Disposition

The order is reversed. On remand, the court shall vacate its statement of decision and entertain Pangilinan's request for genetic testing under section 7551. If it grants that request, it shall hold a new hearing on Pangilinan's petition at which Pangilinan may

---

[6]     Palisoc's reliance on *In re Kiana A.* (2001) 93 Cal.App.4th 1109 (*Kiana*) is misplaced. *Kiana* was a dependency case in which two men had qualified for the status of presumptive father. (*Kiana*, at p. 1117.) In the dependency context, a man acquires rights by achieving presumed father status. In the child support context, the issue is not rights but obligations, and presumed father status is not determinative of a man's obligations.

utilize the genetic test results to attempt to meet her burden of rebutting the presumption that her husband is H.'s father.  Pangilinan shall recover her costs on appeal.


_____
Mihara, J.


WE CONCUR:


_____
Elia, Acting P. J.


_____
Grover, J.

Trial Court:                              Santa Clara County Superior Court

Trial Judge:                             Honorable Irwin Joseph

Attorney for Appellant:          Richard H. Wilson

Attorney for Respondent:       Daniel Jensen