**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LAUREN CASOLA, an individual, | No. 23-55403 |
| *Plaintiff-Appellee*, | D.C. No. 3:22-cv-01865-JO-MDD |
| v. | |
| DEXCOM, INC., | |
| *Defendant-Appellant*. | OPINION |

| | |
|---|---|
| BRENDA BOTTIGLIER, an individual, | No. 23-55435 |
| *Plaintiff-Appellee*, | D.C. No. 3:22-cv-01869-JO-MDD |
| v. | |
| DEXCOM, INC., | |
| *Defendant-Appellant*. | |

HELENA PFEIFER, an individual,

*Plaintiff-Appellee*,

v.

DEXCOM, INC.,

*Defendant-Appellant*.

No. 23-55437

D.C. No.
3:22-cv-01878-
JO-BGS

Appeal from the United States District Court
for the Southern District of California
Jinsook Ohta, District Judge, Presiding

Argued and Submitted December 6, 2023
Pasadena, California

Filed April 10, 2024

Before: Consuelo M. Callahan, Ryan D. Nelson, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Callahan

# SUMMARY[*]

## Diversity Jurisdiction/Removal

The panel dismissed for lack of jurisdiction three consolidated appeals challenging the district court's decision to remand each of the underlying product liability actions back to California state court under the forum defendant rule contained in 28 U.S.C. § 1441(b)(2), which prohibits removal based on diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Violation of the forum defendant rule is a non-jurisdictional defect, which is waived if a plaintiff does not seek remand on that basis within 30 days of removal. Dexcom, the lone defendant and a citizen of California, removed these cases to federal court based on diversity jurisdiction after the complaints were submitted electronically but before they were filed by the clerk of court. Dexcom alleged that the forum defendant rule did not bar removal because Dexcom had not yet been "joined and served" as a defendant as required by § 1441(b)(2).

The panel held that for purposes of removability, an electronically submitted complaint is not "filed" in California state court until it is processed and endorsed or otherwise acknowledged as officially filed by the clerk of the court. Dexcom's removals were ineffectual attempts to remove cases that did not yet exist as civil actions pending in state court, and thus Dexcom's initial notices of removal

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

were legal nullities that did not start the 30-day remand clock under § 1447(c). Accordingly, the district court had the power to grant the plaintiffs' eventual motions to remand based on a perceived violation of the forum defendant rule, even though the motions were brought 31 days after Dexcom's initial (ineffectual) notices of removal. Because the district court had the power under § 1447(c) to order remand based on the forum defendant rule, the panel lacked jurisdiction under 28 U.S.C. § 1447(d) to review the remand orders.

## COUNSEL

Joshua A. Klarfeld (argued), Paul J. Cosgrove, and Georgia Hatzis, UB Greensfelder LLP, Cleveland, Ohio; Kevin W. Alexander, Renata O. Bloom, and Matthew Nugent, Gordon Rees Scully Mansukhani LLP, San Diego, California; for Defendant-Appellant.

Min J. Koo (argued), Tosi Law LLP, Atlanta, Georgia; Timothy M. Clark, Tosi Law LLP, Carlsbad, California; for Plaintiffs-Appellees.

**OPINION**

CALLAHAN, Circuit Judge:

In these three consolidated appeals, Defendant-Appellant Dexcom, Inc. challenges the district court's decision to remand each of the underlying actions back to California state court under the forum defendant rule. The forum defendant rule, contained in 28 U.S.C. § 1441(b)(2), prohibits removal based on diversity jurisdiction "if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." *Id.* (emphasis added). Violation of the forum defendant rule is considered a non-jurisdictional defect, which is waived if a plaintiff does not seek remand on that basis within 30 days of removal. *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 936, 942 (9th Cir. 2006); *see* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . .").

Dexcom, the lone defendant in each of the present actions and undisputedly a citizen of California, removed these cases to federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1332(a), (c)(1). In its initial notices of removal, Dexcom informed the district court that the forum defendant rule did not bar removal because it had not yet been "joined and served" as a defendant. *See* 28 U.S.C. § 1441(b)(2).

In doing so, Dexcom was trying to effect what is known as a "snap removal"—filing its notices of removal before service of the summons and complaint. In fact, Dexcom was attempting an even snappier version of the typical snap

removal.  Dexcom was not just attempting removal pre-*service* but, as we will explain, also pre-*filing* of the underlying complaints in state court.[1]

Like the district court, we conclude that Dexcom's "super snap removals" were ineffectual.  These were attempts to remove cases that did not yet exist as civil actions pending in state court, and thus Dexcom's initial notices of removal were legal nullities that did not start the 30-day remand clock under § 1447(c).  Accordingly, the district court had the power to grant the plaintiffs' eventual motions to remand based on a perceived violation of the forum defendant rule, even though the motions were brought 31 days after Dexcom's initial (ineffectual) notices of removal. Because the district court had the power under § 1447(c) to order remand based on the forum defendant rule, 28 U.S.C. § 1447(d) requires that we dismiss these appeals for lack of jurisdiction.

## BACKGROUND

### Commencement of the Actions

In late 2022, Plaintiffs-Appellees Lauren Casola, Brenda Bottiglier, and Helena Pfeifer (collectively, "Plaintiffs")—proceeding separately but through the same counsel—each brought similar product liability suits against Dexcom in the Superior Court of California, County of San Diego ("Superior Court").[2]  Because the present appeals turn on the

---

[1] As explained in the final section of this opinion, the present appeals do not offer us the chance to decide the permissibility of snap removals in the Ninth Circuit.  This opinion addresses only what we today coin "super snap removals."

[2] A fourth plaintiff also sued Dexcom, and Dexcom's appeal of the remand order in that case was originally consolidated with the present

timing of various steps in the case initiation process, we lay them out in some detail.

On Wednesday, November 23, 2022 (the day before Thanksgiving), Casola electronically submitted her complaint to the Superior Court. As required by that court's local rules, she did so through an electronic filing service provider. *See* S.D. Super. Ct. Local Rule 2.1.4; Cal. Civ. Proc. Code § 1010.6(e) (authorizing trial courts to adopt local rules permitting electronic filing of documents).

The same day, Dexcom's counsel received notice of the complaint's submission through Courthouse News Service ("CNS"), which is "a national news organization that publishes daily reports for its subscribers about civil litigation, including the filing of new lawsuits." *Courthouse News Serv. v. Planet*, 947 F.3d 581, 585 (9th Cir. 2020) (internal quotation marks omitted). The CNS notification report listed the party names, the venue, a CNS-assigned case number ("T22-4576"), and a "Filing Date" of November 23, 2022, along with the names of plaintiff's counsel and a general summary of the claims asserted. The report also offered options to access the complaint itself.

On Monday, November 28, 2022—before the Superior Court had officially filed the complaint or issued a summons—Dexcom filed a notice of removal in the United States District Court for the Southern District of California.**[3]**

---

ones. However, after briefing was completed, we granted the parties' joint motion to dismiss that appeal because that plaintiff voluntarily dismissed her suit in state court. *Lutz v. Dexcom, Inc.*, No. 23-55436, 2023 WL 7491876, at *1 (9th Cir. Oct. 11, 2023).

[3] Dexcom invoked the district court's diversity jurisdiction, and it is undisputed that 28 U.S.C. § 1332's jurisdictional requirements were satisfied in all three cases. Dexcom is a citizen of California and

Dexcom attached to its notice of removal a copy of Casola's state court complaint obtained through CNS. The complaint's caption displayed no filing stamp endorsement, and the case number and judge assignment fields were blank. The notice of removal identified the case only by its CNS-assigned case number because, as Dexcom later advised the district court, the Superior Court case number "was not publicly available."

The next day, the Clerk of the Superior Court officially filed the complaint—endorsing it as "ELECTRONICALLY FILED" on November 29, 2022, at 3:31 PM—and issued a summons bearing the same endorsement. The following day, Wednesday, November 30—two days after Dexcom's notice of removal—Casola served a copy of the complaint and the summons on Dexcom through its agent. About one week later, on December 8, 2022, Dexcom filed a supplemental notice of removal in the district court, providing the official case number assigned by the Superior Court and attaching the endorsed version of the complaint.[4]

### Motions to Remand

Dexcom's original notices of removal were filed in the district court on November 28, 2022. On December 29, 2022, Plaintiffs responded with substantively identical motions to remand their respective actions to state court. Importantly, Plaintiffs' remand motions came 31 days after

_____

Delaware, while Casola, Bottiglier, and Pfeifer are, respectively, citizens of Georgia, Louisiana, and New Jersey. And Plaintiffs have not disputed that the amount in controversy in each case exceeds § 1332's monetary threshold.

[4] Bottiglier's and Pfeifer's cases followed the same procedural chronology as Casola's, with some differences in exact dates which do not impact our analysis and are therefore omitted.

the filing of Dexcom's initial notices of removal—cause for concern given § 1447(c)'s command that a motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of [a] notice of removal." Potentially realizing this timing predicament, Plaintiffs framed their remand motions as based on lack of "subject matter jurisdiction"—a defect which would warrant remand at any time before final judgment. *See id.* Plaintiffs argued that the district court lacked subject matter jurisdiction because Dexcom's notices of removal were "legally void" for having been filed before the Superior Court had processed the complaints. Plaintiffs also asserted that the forum defendant rule precluded Dexcom from removing the cases now that it had been joined and served as a defendant in each of the actions.

In January 2023, with these remand motions pending, the district court issued an order to show cause in each case. The court ordered Dexcom, "a California citizen, to show cause why the case[s] should not be remanded to state court pursuant to the forum defendant rule." As permitted by the orders, both sides responded. Plaintiffs again urged remand for lack of subject matter jurisdiction, while Dexcom both defended its pre-service removals as avoiding the forum defendant rule and challenged Plaintiffs' remand motions as untimely.

In March 2023, the district court granted Casola's remand motion. The district court soon thereafter granted Bottiglier's and Pfeifer's motions for the same reasons stated in Casola's remand order. In its remand orders, the district court held that the actions "must be remanded to state court because as a citizen of California [and therefore a forum defendant], Defendant cannot remove . . . on the grounds of diversity jurisdiction." The court recognized that, because

the "forum defendant rule does not deprive [a] federal court of jurisdiction," a plaintiff waives its forum-defendant objection if not raised within 30 days of the notice of removal. *See Lively*, 456 F.3d at 942. However, the court rejected Dexcom's argument that Plaintiffs had waived their forum-defendant objections by filing their remand motions 31 days after the initial notices of removal because the court deemed those notices of removal "defective."

The district court reasoned that "[a] proper removal requires a complaint to have first been filed." The district court found that, despite Casola electronically submitting her complaint a few days before, the Superior Court "did not file [her] complaint until November 29, 2022, as evidenced by the time stamp of the Clerk of the Superior Court." Because November 29, 2022, was the date the state court action commenced and the date the complaint became the "initial pleading" in the lawsuit, 28 U.S.C. § 1446(b)(1), the court concluded that Dexcom's earlier November 28, 2022, notice of removal was a "defective removal notice" that did not "start the clock on the 30-day window." Accordingly, the district court remanded each action because the cases were removed by a forum defendant and Plaintiffs had not waived this defect.[5]

Dexcom timely appeals the remand orders,[6] which—although not final judgments—"had the force of a final order

---

[5] The district court transmitted the remand orders to the Superior Court where the cases have proceeded during the pendency of these appeals, but the transmittal does not deprive us of appellate jurisdiction. *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1070 (9th Cir. 2021).

[6] Dexcom is not presently appealing the portion of the district court's remand orders granting Plaintiffs' requests for attorneys' fees and costs

given that [they] 'put the litigants effectively out of [federal] court.'" *Lively*, 456 F.3d at 938 n.7 (second alteration in original) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713 (1996)).

## DISCUSSION

### <u>Appellate Jurisdiction</u>

As a general matter, we have jurisdiction to hear these appeals under 28 U.S.C. § 1291. But our jurisdiction to review orders remanding actions to state court is limited by § 1447(d). Section 1447(d) provides that, except in certain types of cases not presented here, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal . . . ." *Id.* Despite the absolute tenor of this prohibition, it has been interpreted "not [to] preclude review if the district court lacked authority to remand under § 1447(c) in the first instance." *Smith v. Mylan Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014). Section 1447(c) reads, in relevant part:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Thus, the two authorized grounds for remanding under § 1447(c) are: (1) lack of subject matter jurisdiction, or

under § 1447(c), and we express no opinion as to the propriety of those rulings.

(2) "nonjurisdictional defects" that are challenged within 30 days of removal. *Acad. of Country Music*, 991 F.3d at 1067; *see Lively*, 456 F.3d at 940, 942 (discussing waiver).

Accordingly, in these appeals, our jurisdiction is limited to determining "whether the district court exceeded the scope of its § 1447(c) authority by issuing the remand order." *Lively*, 456 F.3d at 938. "[I]f the district court lacked authority to remand under § 1447(c), appellate review is not precluded." *Corona-Contreras v. Gruel*, 857 F.3d 1025, 1028 (9th Cir. 2017). "Conversely, if the district court did have authority to remand . . . under § 1447(c), then § 1447(d) applies and we do not have jurisdiction to review the remand order." *Id.*

In some cases, "to determine the district court's authority to issue [a] remand order, we must address the underlying merits of the district court's ruling." *Lively*, 456 F.3d at 938; *see Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003). In *Lively*, for example, to decide whether we had appellate jurisdiction, we had to resolve whether the district court properly remanded sua sponte based on a violation of the forum defendant rule never raised by the plaintiff in the eight months since the case's removal. 456 F.3d at 935, 937–42. We held that § 1447(d) permitted appellate review because the district court exceeded its § 1447(c) authority in ordering remand based on a waivable non-jurisdictional defect—the forum defendant rule—which the plaintiff had not invoked within 30 days of removal. *Id.* at 942. However, even when review is permitted under § 1447(d), "the question . . . is not whether the district court's remand order was *correct*," but whether it was *authorized* under § 1447(c). *Id.* at 938 (emphasis added).

As in *Lively*, determining jurisdiction over the present appeals requires addressing the merits of the district court's remand orders—though only to the extent the merits bear on the district court's power to issue those orders.

## Standard of Review

Where appellate jurisdiction is not barred by § 1447(d), we review de novo a district court's decision to remand a removed case. *Lively*, 456 F.3d at 938. We likewise review de novo a district court's interpretation and construction of federal statutes. *Id.* Removal statutes are "strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). This rule of narrow construction both recognizes the limited jurisdiction of federal courts and "protect[s] the jurisdiction of state courts." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005). "The presumption against removal means that 'the defendant always has the burden of establishing that removal is proper.'" *Moore-Thomas*, 553 F.3d at 1244.

## Analysis

Because the parties disagree on the reason the district court gave for remanding, we begin by clarifying the nature of the remand orders. Plaintiffs frame these appeals as presenting a single dispositive question: whether the district court acted within its § 1447(c) authority by remanding *for lack of subject matter jurisdiction*, a defect which could be addressed at any time before final judgment. We reject this framing. While Plaintiffs indeed *sought* remand based on lack of subject matter jurisdiction, the district court did not order remand on that basis—even though it granted Plaintiffs' respective motions.

The district court agreed with Plaintiffs that Dexcom's (initial) notices of removal were "defective," given their filing in the district court before any of the complaints had been officially filed in the Superior Court. However, from that common starting point, the district court did not go on to conclude that subject matter jurisdiction was lacking. The district court began by acknowledging that the "forum defendant rule does *not* deprive [a] federal court of jurisdiction." (Emphasis added.) It then found that the notices of removal were "defective and therefore . . . d[id] not render Plaintiff[s'] motion[s] to remand *untimely*." (Emphasis added.) Therefore, in the court's view, Dexcom had violated the forum defendant rule and Plaintiffs had timely moved to remand because Dexcom's "defective removal notice[s] [could] not start the clock on the 30-day window." There would have been no need for the court to go through the 30-day-remand-clock analysis it conducted if it were remanding for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c) (requiring remand "at any time before final judgment" if the district court lacks subject matter jurisdiction).

Because the district court's reason for remanding was not lack of subject matter jurisdiction, the central question before us is whether the district court had the power under § 1447(c) to remand these cases based on an undisputedly non-jurisdictional defect (a perceived forum-defendant-rule violation) asserted more than 30 days after the notices of removal. Imbedded within this question are three subsidiary issues. Only the first two are reviewable under § 1447(d).

First, were Dexcom's notices of removal premature? Yes. We conclude that the notices of removal were premature because they were filed in the district court before the respective complaints had been officially filed in the

Superior Court and therefore before the respective actions had commenced.

Second, did the premature notices of removal nevertheless start § 1447(c)'s 30-day remand clock, thereby foreclosing remand premised on a forum-defendant-rule violation asserted 31 days later?  No.  We conclude that the prematurity defect rendered the notices of removal without legal effect.

Dexcom originally invited us to answer a third question as well: did these removals in fact violate the forum defendant rule, as the district court found?  Answering this question would decide whether § 1441(b)(2) permits "snap removal."  But as Dexcom's counsel candidly conceded at oral argument, § 1447(d) deprives us of jurisdiction to decide the snap removal question, as we explain in the final section of this opinion.

## I.    The Question of Prematurity

The prematurity question requires us to determine what constitutes "filing" a complaint in California for purposes of removability.  While this might sound like a simple task given that litigants have been filing complaints in the state for over a century, it turns out to be a matter of first impression that requires close parsing of state law.  After thorough study of California's statutes, rules of court, and case law, we hold that, for purposes of removability, a complaint is "filed" in California state court when it is processed and endorsed or otherwise acknowledged as officially filed by the clerk of the court.[7]

---

[7] We emphasize that this rule applies only when determining whether a civil action is *in fact* pending in state court—a prerequisite for removal—

To begin, the general removal statute permits "any civil action" brought in state court, which could have been brought in federal court, to be removed to the federal court of the district "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Dexcom does not dispute the premise that, at least in California, a complaint must be *filed* in state court before it becomes a "pending" "civil action" that can be removed to federal court.**[8]**  *See id.*; *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 686 (9th Cir. 2005) (observing in the Class Action Fairness Act context that "[i]t is axiomatic that an individual or entity may not remove a dispute before it has commenced in state court").  State law determines when a state court dispute becomes a cognizable legal action eligible for removal.  *Cheaptickets, Inc.*, 425 F.3d at 686.  "In most states this occurs either when the suit is filed or when the complaint or summons is served."  *Id.*  In California (where Plaintiffs brought their suits), "[a] civil action is commenced by filing a complaint with the court."  Cal. Civ. Proc. Code § 411.10.  Thus, we must decide what constitutes "filing a complaint" in a California trial court, *id.*, giving rise to a removable "civil action" within the meaning of § 1441(a).

### a.

Because Plaintiffs submitted their complaints to the Superior Court through an electronic filing service

---

not when determining whether an action was timely commenced, as in cases involving statute of limitations issues.

[8] In certain states like Washington, a civil action can also be commenced by service of a summons and complaint, not purely by filing the complaint.  *See* Wash. Rev. Code § 4.28.020; *Seattle Seahawks, Inc. v. King Cnty.*, 128 Wash.2d 915, 917 (1996).

provider,[9] Dexcom directs the court to section 1010.6 of the California Code of Civil Procedure, which governs electronic filing and electronic service. Specifically, Dexcom argues that section 1010.6, subdivision (e)(3) dictates when an electronically submitted complaint is filed. We disagree.

Subdivision (e) of section 1010.6 authorizes California trial courts to adopt local rules permitting the "electronic filing of documents," subject to certain mandatory conditions. One of these conditions is that:

> Any document received electronically by the court between 12:00 a.m. and 11:59:59 p.m. on a court day *shall be deemed filed* on that court day. Any document that is received electronically on a noncourt day shall be deemed filed on the next court day.

Cal. Civ. Proc. Code § 1010.6(e)(3) (emphasis added). Dexcom argues that section 1010.6(e)(3) means that Plaintiffs' complaints—each submitted on a weekday— were filed "[w]hen they were transmitted for filing, not when the clerk eventually docketed them." However, Dexcom ignores surrounding provisions of section 1010.6 and various California Rules of Court that clarify how section 1010.6 applies.

---

[9] "An 'electronic filing service provider' is a person or entity that receives an electronic filing from a party or other person for retransmission to the court or for electronic service on other parties or other persons, or both." Cal. R. Ct. 2.250(b)(8).

Beginning with the statute's definitions subdivision, section 1010.6(a)(1)(D) specifies that:

> "Electronic filing" means the electronic transmission to a court of a document *presented* for filing in electronic form. For purposes of this section, this definition of electronic filing concerns the activity of filing and does not include the *processing and review* of the document and its *entry* into the court's records, *which are necessary for a document to be officially filed.*

*Id.* (emphases added). Subdivision (a)(1)(D) undermines much of Dexcom's argument that the transmission of a complaint equates to the actual filing of a complaint. This subdivision expressly distinguishes between the *presentation* of a document for filing and the *official filing* of a document after processing and review. *Id.*

This distinction makes sense because clerks of court must review submissions for compliance with court rules. For instance, in California trial courts, the clerk of court "must not accept for filing or file any papers that do not comply with the rules" governing form and format. Cal. R. Ct. 2.118(a). Many filings, and notably most complaints, also require payment of filing fees. *See* Cal. Gov't Code § 70611 (setting uniform fee for filing "the first paper" in unlimited civil actions).

Subdivision (e)(4) of section 1010.6 spells out in some detail the various responsive actions the clerk of court—or in some cases an electronic filing service provider—must take upon receipt of a "document submitted for electronic filing." Cal. Civ. Proc. Code § 1010.6(e)(4)(A); *see id.*

§ 1010.6(e)(4)(A)–(E).    Whichever entity receives the document first must "promptly" send a confirmation of receipt to the sender, indicating the date and time of receipt. *Id.* § 1010.6(e)(4)(A).  If the document received by the court "complies with filing requirements and all required filing fees have been paid, the court shall promptly send confirmation that the document has been filed to the party or person who submitted the document." *Id.* § 1010.6(e)(4)(B). "If the clerk of the court *does not file* a document received by the court . . . because the document does not comply with applicable filing requirements or the required filing fee has not been paid, the court shall promptly send notice of the rejection of the document for filing" to the sender.  *Id.* § 1010.6(e)(4)(C) (emphasis added).    In the event of a rejection *of a complaint* (or cross complaint) under subparagraph (C), "any statute of limitations applicable to the causes of action alleged in the complaint . . . shall be tolled" from the date the complaint was received through the date the notice of rejection was sent, plus one additional day. *Id.* § 1010.6(e)(4)(E).

These provisions, again, reflect that just because a document is "submitted for electronic filing," *id.* § 1010.6(e)(4)(A), does not mean that it is, or will be, filed. Subdivision (e)(4) further reflects a legislative understanding that some time will pass between a document's submission and its review for filing, and therefore creates a system for tolling the statute of limitations for rejected complaints.  *Id.* § 1010.6(e)(4)(E). There would be no need to "toll" the statute of limitations if a complaint were in fact filed immediately upon its submission to the court.

Additionally, section 1010.6(e)(3)'s use of the word "deemed" reflects the same usage appearing in the California

case law regarding the timeliness of filings for purposes of statutes of limitation and other filing deadlines. *See Pangilinan v. Palisoc*, 174 Cal. Rptr. 3d 114, 116–17 (Ct. App. 2014) (finding notice of appeal was timely because it must be "*deemed* filed" on the date appellant presented it to the clerk's office for filing (emphasis added)); *People v. Stiehl*, 131 Cal. Rptr. 3d 1, 3 (Ct. App. 2011) (finding the district attorney complied with a statutory filing deadline because the criminal information "should have been *deemed* 'filed' upon its presentation to the clerk" (emphasis added)); *Carlson v. Cal. Dep't of Fish & Game*, 80 Cal. Rptr. 2d 601, 602, 606 (Ct. App. 1998) (holding that complaint was "effectively filed" before the statute of limitations ran because "a paper is *deemed* filed when it is presented to the clerk for filing" in a form that complies with state law (emphasis added)); *Rojas v. Cutsforth*, 79 Cal. Rptr. 2d 292, 292, 294 (Ct. App. 1998) (reversing summary judgment on statute-of-limitations grounds where complaint was rejected for an insubstantial defect, and remanding with "instructions to *deem* the complaint filed" on the date it was presented to the clerk (emphasis added)); *see also Schneider v. Hall*, No. A141948, 2017 WL 772437, at *5 (Cal. Ct. App. Feb. 28, 2017) (unpublished) ("The remedy when a clerk improperly refuses to file a paper . . . is for the court to *deem* the paper filed as of the date it was presented to the clerk for filing." (emphasis added)).  This reinforces the conclusion that section 1010.6(e)(3) is concerned with establishing a document's timeliness, not its official entry as a court record. When read in its entirety, therefore, section 1010.6 does not support the weight Dexcom places on subdivision (e)(3).

The California Rules of Court for the state's trial courts, promulgated by the Judicial Council of California, provide

further guidance on section 1010.6's application.[10]   Rule 2.250 reinforces the statutory distinction between presentation and acceptance of documents for filing, using language like that found in section 1010.6(a)(1)(D).  *See* Cal. R. Ct. 2.250(b)(7) (defining "Electronic filing").  Rule 2.259 likewise mirrors section 1010.6(e)(4)'s required notifications regarding the filing or rejection of documents received electronically, adding more detailed requirements in some areas.  Cal. R. Ct. 2.259(a)–(b).  For example, Rule 2.259(d) specifies the required format of the endorsement to be placed upon electronically filed documents.[11]  Cal. R. Ct. 2.259(d)(1).

---

[10] We have explained the authority of the Judicial Council and the force of California Rules of Court as follows:

> Article VI, Section 6 of the California Constitution establishes the Judicial Council of California and charges it with "adopt[ing] rules for court administration, practice and procedure," specifying that "[t]he rules adopted shall not be inconsistent with statute."  CAL. CONST. art. VI, § 6(d).  In turn, the Judicial Council adopted the California Rules of Court, which "'have the force of statute to the extent that they are not inconsistent with legislative enactments and constitutional provisions.'" *Silverbrand v. Cnty. of Los Angeles*, 46 Cal. 4th 106, 92 Cal. Rptr. 3d 595, 205 P.3d 1047, 1059 (2009) (quoting *Sara M. v.*
>
> *Superior Court*, 36 Cal. 4th 998, 32 Cal. Rptr. 3d 89, 116 P.3d 550, 556 (2005)) (internal quotation marks omitted).

*Schmidt v. Contra Costa County*, 693 F.3d 1122, 1133 (9th Cir. 2012).

[11] "The court's endorsement of a document electronically filed must contain the following: 'Electronically filed by Superior Court of

Rule 2.253 provides the most concrete basis for rejecting Dexcom's interpretation of section 1010.6(e)(3). As relevant here, Rule 2.253 authorizes California trial courts, through local rules, to institute not only the permissive electronic filing authorized by section 1010.6 but also mandatory electronic filing in certain civil actions. Cal. R. Ct. 2.253(a), (b). Courts that institute mandatory electronic filing, such as the Superior Court that received Plaintiffs' complaints, must comply with the same mandatory conditions set forth in section 1010.6 as well as additional conditions specified in the Rules of Court. Cal. R. Ct. 2.253(b). Critically for present purposes, Rule 2.253 specifies that in local rules instituting mandatory electronic filing,

> [t]he *effective date* of filing any document received electronically is prescribed by Code of Civil Procedure section 1010.6. This provision concerns *only the effective date of filing.* Any document that is received electronically *must be processed and satisfy all other legal filing requirements to be filed as an official court record.*

Cal. R. Ct. 2.253(b)(6) (emphases added). Rule 2.253(b)(6)'s reference to section 1010.6 must refer to subdivision (e)(3), as that is the statute's only provision addressing filing dates.

One of the few cases to interpret Rule 2.253(b)(6) is *Westlands Water District v. County of San Joaquin,*

---

California, County of _____, on _____ (date),' followed by the name of the court clerk." Cal. R. Ct. 2.259(d)(1).

No. F081181, 2021 WL 873090 (Cal. Ct. App. Mar. 9, 2021) (unpublished).[12]  There, in determining the timeliness of an answer submitted electronically in Fresno County Superior Court (which also mandates electronic filing for certain civil cases), *id.* at \*1, the Fifth District Court of Appeal stated that the above italicized language "warns that mere receipt of a document does not mean it will be filed," *id.* at \*5.  The Court of Appeal explained: "Defective papers may be rejected by the clerk of court.  However, if the defect is cured and the document is filed, the filing date relates back to the date of receipt, which is the 'effective date' of the filing." *Id.* (citing Cal. R. Ct. 2.253(b)(6) and Fresno County Superior Court local rules).

This interpretation of Rule 2.253(b)(6)—which in turn establishes how section 1010.6(e)(3) applies in mandatory electronic filing cases such as those now before us—clarifies that the date the clerk receives a document sets the *effective* date of a document's filing but not necessarily the *actual* date of that document's filing.  Especially for case-initiating documents like a complaint, the difference between the two can be significant.  As demonstrated here, fourteen days (eight business days, accounting for the Thanksgiving holiday) passed between the Clerk of the Superior Court receiving Pfeifer's complaint on November 23, 2022, and endorsing it as filed on December 7, 2022.[13]  Under Rule 2.253(b)(6) and section 1010.6(e)(3), her complaint

---

[12] We may consider unpublished California Court of Appeal decisions in determining California law, even though such opinions are not precedent within the state system.  *See Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, 1008 n.2 (9th Cir. 2012).

[13] Meanwhile, Casola's and Bottiglier's complaints were processed within three business days.

undoubtedly enjoys an "effective date" of November 23, 2022, and would have to be "deemed" filed on that date if challenged as untimely. However, both quoted terms inherently imply that this date is not necessarily the *actual* filing date.

Thus, contrary to Dexcom's contentions, section 1010.6(e)(3) does not dictate when an electronically submitted complaint is actually filed.

**b.**

We are aware of no California case discussing at what moment a complaint is actually filed, as opposed to when it is deemed filed for timeliness purposes. There is, however, straightforward California case law regarding what constitutes the act of filing documents *other than complaints*. In *Tregambo v. Comanche Mill & Mining Company*, the California Supreme Court overturned a default judgment entered against a defendant whose demurrers were initially received by the clerk without imposing any filing fee but were then rejected for failure to pay the purported filing fee. 57 Cal. 501, 505–06 (1881) (in bank). Finding that the clerk of court waived his right to require prepayment, the high court stated:

> When, therefore, the demurrers were brought and deposited with the clerk for filing, they were, in contemplation of law as to the defendant, on file in the case. A paper in a case is said to be filed when it is delivered to the clerk and received by him, to be kept with the papers in the cause. Filing a paper consists in presenting it at the proper office, and leaving it there, deposited with the papers

> in such office.  Indorsing it with the time of
> filing is not a necessary part of filing.

*Id.* at 506 (internal citations omitted).

*Tregambo*'s definition of filing has become "a long-standing principle of California law." *Stiehl*, 131 Cal. Rptr. 3d at 3.  It is often cited in cases addressing timeliness challenges, *see, e.g.*, *id.*; *In re Gray*, 102 Cal. Rptr. 3d 551, 558 (Ct. App. 2009), but *Tregambo* itself was not a timeliness case.  It was simply deciding whether the defendant's demurrers had been filed (and thus whether default judgment was appropriate), not whether they were timely filed.  Therefore, *Tregambo* can be read to squarely answer the question of what constitutes the actual filing (not the *deemed* filing) of a document in a California trial court: "Filing a paper consists in presenting it at the proper office, and leaving it there, deposited with the papers in such office."  57 Cal. at 506.

This holding at first appears to offer strong support for Dexcom's argument that Plaintiffs "filed" their complaints when they (electronically) deposited them with the Superior Court via an electronic filing service provider.  If *Tregambo*'s principle applied, the Superior Court's delay in endorsing and docketing the complaints would not affect their filed status, since endorsement with the time of filing "is not a necessary part of filing."  *Id.*

However, for several reasons, *Tregambo* does not apply.  First, *Tregambo* long predates the present detailed electronic filing provisions contained in section 1010.6 and the California Rules of Court.  As noted, those provisions instruct against equating mere presentation of a complaint for filing with its actual filing as a court record.  Further,

*Tregambo* was not addressing the filing of a *case-initiating* pleading, like a complaint. The filing of a complaint is different, given the unique processing and docketing required at the commencement of an action.

For one thing, most complaints—including those in the present cases—require payment of a filing fee. *See* Cal. Gov't Code § 70611; *Duran v. St. Luke's Hosp.*, 8 Cal. Rptr. 3d 1, 2 (Ct. App. 2003) ("An unbroken line of decisions by our Supreme Court holds that it is mandatory for court clerks to demand and receive the fee required by statute before documents or pleadings are filed."). In *Duran*, 8 Cal. Rptr. 3d 1, for example, the First District Court of Appeal affirmed the dismissal of a complaint as time-barred where the complaint was tendered with a check that was $3 short of the required filing fee.[14] The plaintiffs argued that the Court of Appeal should apply a version of *Tregambo*'s delivery-as-filing rule (stated in a more recent California Supreme Court case)—that "'filing' for purposes of compliance with the time limits [for seeking review of a decision by the state's Agricultural Labor Relations Board] means what it does in all other contexts: actual delivery of the petition to the clerk at his place of business during office hours." *Id.* at 4 (quoting *United Farm Workers of Am. v. Agric. Lab. Rels. Bd.*, 37 Cal. 3d 912, 918 (1985)). The *Duran* court found *United Farm Workers of America* "clearly distinguishable" because, first, that case was not addressing a civil complaint

---

[14] Shortly after the *Duran* decision, the California legislature enacted a statute to avoid this unjust result in the future. *See* Cal. Civ. Proc. Code § 411.21(a) ("If a complaint or other first paper is accompanied by payment by check in an amount less than the required fee, the clerk shall accept the paper for filing, but shall not issue a summons until the court receives full payment of the required fee.") (enacted by Cal. Stats. 2005, c. 75 (A.B. 145), § 31).

but rather a filing that did not require a filing fee, and second, "the issue was not the commencement, but the continuation of litigation already under way." *Id.* at 3–4. The court relied instead on a different California Supreme Court case, *Davis v. Hurgren*, which held that "the mere fact that the clerk received [a notice of intent to seek a new trial] . . . did not constitute a filing" because the notice was not accompanied by the mandatory filing fee. *Id.* at 4 (discussing and quoting *Davis v. Hurgren*, 125 Cal. 48, 51 (1899)). *Duran* and *Davis* therefore demonstrate that California courts do not follow *Tregambo*'s delivery-as-filing rule for complaints and other case-initiating papers requiring a filing fee.

Second, *Tregambo* itself can be read to require more than mere delivery to accomplish filing. The California Supreme Court wrote: "A paper in a case is said to be filed when it is delivered to the clerk *and received by him*, to be kept with the papers in the cause." 57 Cal. at 506 (emphasis added). It also acknowledged that, although the clerk in that case demanded no fees, "he had a legal right to refuse to file [the demurrers], unless the fees for that service were paid to him." *Id.* These statements imply that filing is a combination of delivery of the document *and its acceptance* by the clerk.

Finally, even assuming *Tregambo* and *United Farm Workers of America* set a pure delivery-as-filing rule, that rule arose from a need to protect filers from legal injury caused by a clerk's error or omission. *See Tregambo*, 57 Cal. at 506 (stating in closing that clerk's "omission of duty [by not endorsing the demurrers as filed] could not prejudice the defendant in any of its legal rights"). The best way to do so was to focus exclusively on the actions of the filer. *See United Farm Workers of Am.*, 37 Cal. 3d at 918 ("[I]t is the filer's actions that are scrutinized."). However, the focus of

the inquiry must broaden beyond merely the filer's actions when analyzing whether a complaint is filed for purposes *other than* preventing an administrative injustice.   For instance, when considering the operative status of a complaint, the plaintiff's delivery of the complaint to the clerk is of course essential; but equally important in considering the document's operative status is what the clerk does with it next.  A civil action does not spontaneously arise just because a complaint is delivered to a clerk.  The clerk's office must, among other things, process the complaint and create a new civil case file and docket in which the complaint can be entered as a court record.  California Code of Civil Procedure section 1010.6(a)(1)(D) tells us this "processing and review of the document and its entry into the court's records . . . are necessary for a document to be officially filed."  California Rule of Court 2.253(b)(6) says essentially the same: "Any document that is received electronically must be processed and satisfy all other legal filing requirements to be filed as an official court record."

For all these reasons, *Tregambo*'s delivery-as-filing rule does not govern the present cases.

### c.

We also reject Dexcom's policy argument that we should avoid adopting different rules for removal purposes, on the one hand, and for statute-of-limitations and similar timeliness purposes, on the other.   Dexcom warns that rejection of its delivery-based rule will mean that the same complaint could be treated as filed for purposes of the statute of limitations but unfiled for purposes of removal.  While there can be virtue in uniformity, this argument fails given the vastly different interests at stake in the two scenarios.

In advocating for a uniform delivery-based filing rule, Dexcom cites only cases regarding the timeliness of complaints and other critical filings. *See United States v. Dae Rim Fishery Co.*, 794 F.2d 1392 (9th Cir. 1986), *Loya v. Desert Sands Unified Sch. Dist.*, 721 F.2d 279 (9th Cir. 1983); *Pangilinan*, 174 Cal. Rptr. 3d 114; *Stiehl*, 131 Cal. Rptr. 3d 1; *Carlson*, 80 Cal. Rptr. 2d 601. These cases, however, are explicitly limited to contexts in which the expiration of the statute of limitations or another critical filing deadline was at stake. As the district court put it, timeliness cases aim "to prevent the manifest injustice of a clerk's refusal to file a complaint depriving a plaintiff of the right to bring suit."

The stakes here are far lower. It is defendant Dexcom, a litigant with no filing deadline riding on the question,[15] who

---

[15] Of course, removing defendants do have a 30-day clock of their own to contend with. In states like California where initial pleadings generally must be served on defendants (not simply filed), the notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . ." 28 U.S.C. § 1446(b)(1). However, that 30-day removal clock only starts ticking once the defendant has been served. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (holding that, where defendant was faxed a courtesy copy of a *filed* complaint, defendant's time to remove is not triggered "by mere receipt of the complaint unattended by any formal service"). To be sure, a defendant might *choose* to remove before service. *See Novak v. Bank of N.Y. Mellon Tr. Co.*, 783 F.3d 910, 911 (1st Cir. 2015) (per curiam) (holding that defendants are not precluded from removing pre-service). But there is no statutory removal deadline that compels them to do so.

At any rate, based on our above analysis of California law, Dexcom was attempting to remove after receiving a *not-yet-filed* complaint. Section 1446(b)(1) ties the 30-day removal deadline to receipt of "a copy of the initial pleading." The unfiled complaints Dexcom accessed through CNS did not become "initial pleading[s]" until they were

asks the court to deem these cases into existence before their docketing in state court. And for what purpose but to attempt to deprive Plaintiffs of their choice of forum? Whatever the benefits might be to litigating in federal court, there is no manifest injustice to a California-based company having to defend itself in a California court. Further militating against deeming a civil action to be commenced at the earliest possible moment is the overall comity interest in "ensur[ing] respect for the jurisdiction of state courts." *Harris*, 425 F.3d at 698 (citing this as an interest served by not permitting premature removals of a different sort). Often-overburdened state trial courts deserve the chance to at least register the pleadings that come to them before having cases removed by nimble parties.

In addition, given that snap removal remains an available option for defendants at least in some district courts in California, adopting Dexcom's delivery-as-filing rule would effectively give in-forum defendants with subscriptions to e-filing monitoring services a safe harbor in which to accomplish snap removals unhindered by speedy service of process. As both sides acknowledged at oral argument, Plaintiffs could not serve Dexcom until they received a copy of their respective summonses from the Superior Court. Service of summons is what gives a superior court—and courts, generally—jurisdiction over a defendant (unless the defendant enters a general appearance). Cal. Civ. Proc. Code § 410.50(a); *see Murphy Bros.*, 526 U.S. at 350 ("Service of summons is the procedure by which a court asserts jurisdiction over the person of the party served."

---

officially filed by the Superior Court. As discussed in the next section, before a complaint has been filed, there is not anything to be removed— much less anything to start the removal clock.

(alterations and citation omitted)).  And, under California law, service on a corporation is accomplished "by delivering a copy of *the summons* and the complaint" through designated methods.    Cal. Civ. Proc. Code § 416.10 (emphasis added).    However, "[n]o summons may be issued . . . until the complaint . . . has been *filed* and the filing fees paid."   Judicial Council Comment to Cal. Civ. Proc. Code § 412.10 (emphasis added).

Here, Casola could not have served Dexcom until late on November 29, 2022, at the very earliest, since the summons was stamped (and presumably issued) at 3:31 PM that day. This was one day after Dexcom filed its notice of removal and a full six days after Dexcom caught wind of the complaint's e-submission through its counsel's CNS subscription.  For those six days awaiting her copy of the summons, Casola had no way to prevent Dexcom from effecting a snap removal and claiming it had not yet been "properly joined and served," 28 U.S.C. § 1441(b)(2).

Accordingly, we hold that, for purposes of removability, an electronically submitted complaint is not "filed" in California state court until it is processed and endorsed or otherwise acknowledged as officially filed by the clerk of the court.  *See* Cal. Gov't Code § 69846.5.  A case will normally become removable as of the filing date shown on the endorsement stamped on the complaint when it is entered into the court's records; nonetheless, a removing party might submit other evidence to establish an earlier filing date where the file-stamped date is missing, illegible, or demonstrably incorrect.

Applying that rule here confirms the district court's view that Dexcom's initial notices of removal were premature in each case.  Once processed by the Superior Court, Casola's

and Bottiglier's complaints were stamped as "ELECTRONICALLY FILED" on November 29, 2022, and Pfeifer's on December 7, 2022. There is no evidence or argument in support of an earlier filing date. Under the rule we adopt today, those are the dates each action was filed and became a pending civil action removable under 28 U.S.C. § 1441(a). Dexcom filed its notices of removal in all three cases on November 28, 2022, before the cases officially existed. Therefore, the notices of removal were premature.[16]

## II.    The Question of Effect

We turn next to the question of whether the notices of removal, despite their prematurity, nevertheless started the 30-day clock for non-jurisdictional objections to removal. *See* 28 U.S.C. § 1447(c). Dexcom challenges the district court's reasoning that a "defective" notice of removal "cannot start the clock on the 30-day window for a remand motion." Were the present notices of removal defective for merely procedural or technical reasons, we might agree that their defectiveness would not block the 30-day window from opening. Holding otherwise would lead to the litigation of non-jurisdictional removal defects long past the time Congress intended. *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir. 1995) ("The purpose of the 30-day time limit is to resolve the choice of forum at the early stages of litigation,

---

[16] The only other federal court to have analyzed the above California authorities in determining the removability of a case removed before it was officially filed came to the same conclusion that we reach. *See Martinez v. Airbnb, Inc.*, --- F. Supp. 3d ----, No. 23-CV-02941-DMR, 2023 WL 5942273 (N.D. Cal. Sept. 11, 2023) (remanding after finding notice of removal was prematurely filed before the San Francisco County Superior Court had reviewed and officially accepted the electronically submitted complaint).

and to prevent the shuffling of cases between state and federal courts after the first thirty days." (internal quotation marks, alteration, and citation omitted)).

However, the notices of removal here had a foundational defect—the absence of an existing civil action in state court—that rendered them not just defective but legally null and void. There were no pending civil actions that could be removed when Dexcom filed its initial notices of removal because the complaints had not been officially filed. While not a traditional "subject matter jurisdiction" defect, the lack of a pending state court case still presents a jurisdictional problem for removal. Dexcom provides no authority for a contrary holding. *See Moore-Thomas*, 553 F.3d at 1244 (defendant's burden to establish that removal is proper).

This logically leads to the conclusion that, as Plaintiffs originally argued in their remand motions, the premature November 28, 2022, notices of removal did not confer jurisdiction on the district court to hear the cases because there were no cases then pending. That jurisdictional defect, however, was cured by Dexcom's filing of *supplemental* notices of removal in each case *after* the respective complaints had been officially filed in the Superior Court (and before the district court ruled on the remand motions).

Nevertheless, curing the jurisdictional defect did not retroactively cure the prematurity of the original notices of removal. Without any existing civil action to be removed when Dexcom first came to federal court, its original notices of removal were legally inoperative and did not start the 30-day remand clock. Section 1447(c)'s 30-day clock only started upon the filing of the supplemental notices of removal.

Because Plaintiffs' remand motions were filed within 30 days of the supplemental notices of removal, they timely asserted the forum-defendant-rule violation raised in those motions. Although Plaintiffs' motions were not primarily asserting a forum-defendant-rule violation, they explicitly raised that defect. Thus, the remand orders were not sua sponte remands forbidden under *Lively*, 456 F.3d at 936. Therefore, the district court acted within its § 1447(c) authority to remand each case for what it perceived to be a violation of the forum defendant rule.

## III.    The Snap Removal Question

We do not today decide the final issue imbedded in the remand orders: whether Dexcom in fact violated the forum defendant rule in these cases. The district court held these removals did violate the rule, but it did so without mentioning Dexcom's snap removal argument that *pre-service* removals by a forum defendant are permissible. We do not address that renewed argument here for two reasons. First, to resolve these appeals arising from pre-*filing* "*super* snap removals*," it is not necessary to decide whether pre-service snap removals are permissible under 28 U.S.C. § 1441(b)(2). Second, and more importantly, § 1447(d) bars us from addressing the correctness of the district court's implied finding that snap removals are not allowed.[17]

---

[17] It is now common practice for in-forum defendants in potential diversity actions to race to file a notice of removal before being served with process and then claim shelter under the "properly joined and served" language in § 1441(b)(2). Three sister circuits have held that § 1441(b)(2), by its plain text, permits snap removals—notwithstanding counterarguments that the basic premise of diversity jurisdiction is to protect non-forum litigants from potential state court bias toward in-forum litigants. *See Tex. Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482,

As mentioned at the outset, in reviewing a remand order, our appellate jurisdiction is limited to determining "whether the district court exceeded the scope of its § 1447(c) authority." *Lively*, 456 F.3d at 938. In this posture, we "cannot examine whether a particular exercise of power was proper." *Pittsburg-Des Moines Steel Co.*, 69 F.3d at 1038 (internal quotation marks and citation omitted). Section 1447(d) limits our jurisdiction to questions going to "the district court's power to order a remand, not to the merits of the court's finding of a defect in removal procedure." *Id.* The district court's finding of a forum-defendant-rule violation here constitutes a finding of a defect in removal procedure. *See Lively*, 456 F.3d at 936 n.4 (noting that, although the forum defendant rule does not fit neatly within the traditional concept of a procedural defect, it is one). Unlike the question of the legal effect of a premature notice of removal—which determines whether the district court had the *power* to remand even though 30 days had elapsed since the notices of removal—the snap removal question goes to the *correctness* of the remand orders. Thus, § 1447(d) prohibits our review of the district court's application of the

---

486–87 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705–07 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152–54 (3d Cir. 2018). *But see, e.g.*, *U.S. Bank Nat'l Ass'n, etc. v. Fid. Nat'l Title Grp., Inc.*, 604 F. Supp. 3d 1052, 1058–59 (D. Nev. 2022).

District courts in circuits like ours that have not decided the permissibility of snap removal are divided on the matter. However, the present appeals do not offer us the chance to conclude the debate on snap removal in the Ninth Circuit because, unlike the above circuit court cases, these appeals arise from orders granting—rather than denying— remand. *See* 28 U.S.C. § 1447(d) (generally prohibiting appellate review of "[a]n order remanding a case to the State court from which it was removed").

forum defendant rule.  *See Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 642 (2006) ("Where the order is based on one of the [grounds enumerated in 28 U.S.C. § 1447(c)], review is unavailable no matter how plain the legal error in ordering the remand." (alteration in original) (quoting *Briscoe v. Bell*, 432 U.S. 404, 413–14 n.13 (1977))).

## CONCLUSION

While the final chapter on snap removals in the Ninth Circuit remains to be written, today we close the book on California defendants' attempts at ever-snappier snap removals.  Those being sued in state court must wait at least until the case against them becomes a "pending" "civil action," 28 U.S.C. § 1441(a), before removing the matter to federal court.  In California, this means waiting until the complaint has been officially filed in the superior court.  A notice of removal filed in a district court before the complaint's official filing in the state court is of no legal effect, even if it is docketed by the district court clerk's office.  Such a premature notice of removal neither vests the district court with jurisdiction nor starts the 30-day clock for non-jurisdictional remand motions.  However, a subsequent supplemental notice of removal will, as here, cure the jurisdictional defect and start the 30-day clock.

Based on these holdings, the district court did not exceed its § 1447(c) authority in remanding based on a timely raised non-jurisdictional defect.  We therefore lack jurisdiction to review its remand orders, *see* 28 U.S.C. § 1447(d), and these consolidated appeals are **DISMISSED**.  Given the issues of first impression here presented, each party shall bear its own costs of appeal.